UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Samuel McLaurin,<br><br>    Plaintiff,<br><br>        v.<br><br>Carolyn W. Colvin,<br>Acting Commissioner of Social Security<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil No. 14-cv-00217 (APM)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Plaintiff Samuel McLaurin seeks judicial review of a Social Security Administration (SSA) decision that denied his application for child's insurance benefits. The question before the court is a discrete one: Did the Administrate Law Judge (ALJ) who reviewed the denial of Plaintiff's claim for benefits adequately consider and weigh the expert reports of a psychologist who evaluated and rendered an opinion regarding Plaintiff's developmental and learning disabilities? The court concludes that she did. The Administrative Law Judge correctly applied the controlling regulations and sufficiently explained why she did not find Plaintiff's psychologist's reports convincing. The court thus denies Plaintiff's Motion for Judgment of Reversal and grants Defendant's Motion for Judgment of Affirmance.

## II. BACKGROUND

### A. Factual Background

Plaintiff Samuel McLaurin was born on December 5, 1988. Within the first few years of his life, he was diagnosed with several impairments, including mild cerebral palsy and "severe visual perceptual and visual processing problems." Administrative Record, ECF No. 4-7, at 294-302 [hereinafter "AR 4-[ECF Exhibit No.]"]. Though he was expected to face academic difficulties, *id.*, Plaintiff graduated from high school in 2008 at the age of 19. Soon thereafter, Plaintiff began attending a "job readiness" training program at a vocational rehabilitation clinic to help address difficulties involving his ability to concentrate and to work with others. AR 4-2 at 19; AR 4-6 at 289. Plaintiff worked a temporary job in conjunction with his vocational rehabilitation, where counselors reported that he did "a good job" and excelled at "assembly type of work." AR 4-6 at 247. Plaintiff has had no other work experience. AR 4-2 at 53-54.

While still attending the vocational rehabilitation program, Plaintiff saw Dr. Gordon Teichner, a licensed clinical psychologist, on four occasions between April 21, 2009, and June 22, 2009. AR 4-7 at 303. In a report dated October 29, 2009, Dr. Teichner produced a neuropsychological assessment based on his findings from clinical interviews, intelligence tests, psychological testing, and other performance-related academic achievement tests. *Id.* The report identified numerous impairments, including deficits resulting from "right hemisphere dysfunction" and the "documented event of neonatal hypoxic encephalopathy," as well as deficits to "visual processing, visual spatial skills, and visual memory" that "make it difficult for him to efficiently perform functions that require such skills." AR 4-7 at 309-10. Dr. Teichner's report also noted additional deficits that impaired Plaintiff's handwriting abilities, ability to maintain attention, behavioral functioning, interpersonal relations, and emotional balance. AR 4-7 at 310. Dr.

Teichner assigned Plaintiff a Global Assessment of Functioning (GAF) score of 45—which indicates a low level of functioning, AR 4-6 at 292 (citing Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV) 30-32 (4th ed. 1996)—and a Full Scale IQ (FSIQ) score of 83. AR 4-7 at 305, 309.

Plaintiff became eligible for child's insurance benefits under the Social Security Act when his father, James McLaurin, died on October 10, 2010. AR 4-2 at 16; 20 C.F.R. § 404.350(a)(5). Plaintiff filed an application for disability benefits with the SSA on October 28, 2010. AR 4-2 at 16. In his application, Plaintiff identified six disabilities: diaphragmatic hernia-hypoxia at birth; cerebral palsy; a learning disability; right-side brain damage; a repetitive disorder; and asthma. AR No. 4-6 at 231-32.

During Plaintiff's SSA application process, Dr. R. Allen Lish performed a consultative evaluation in conjunction with the review of Plaintiff's application. Def.'s Mem., ECF No. 8, at 5. Dr. Lish memorialized his findings in a report dated March 17, 2011. AR No. 4-7 at 322-34. His report highlighted observations that Plaintiff seemed to be "a man of below average intelligence" whose "mental status and cognitive abilities appear[ ] diminished." AR 4-7 at 323. However, Dr. Lish found that Plaintiff could manage his daily living needs without assistance and believed that Plaintiff "does seem capable of independent living with proper support." AR 4-7 at 324. Dr. Lish reported Plaintiff's GAF score as 55. *Id.* Subsequently, upon request by the ALJ, several other health care professionals reached similar conclusions after reviewing Plaintiff's medical records and related medical opinions. AR 4-7 at 342-53.

The SSA denied Plaintiff's initial application on May 1, 2011, and on June 30, 2011, denied an appeal for reconsideration of the decision. AR 4-2 at 16. On June 26, 2011, Plaintiff responded with a request for an administrative hearing. AR 4-4 at 126-30.

Shortly thereafter, on July 1, 2011, Dr. Teichner submitted an additional letter addressed to the SSA that reaffirmed the findings and opinions articulated in his 2009 report. AR 4-7 at 359-62. Dr. Teichner opined that Plaintiff "has <u>never</u> demonstrated sufficient capacity to gain and maintain meaningful employment" despite extensive assistance from vocational rehabilitation services for over three years. AR 4-7 at 361 (emphasis in original).

On February 17, 2012, Dr. Teichner submitted another report that directly addressed the guidelines for disability outlined by the Social Security Act. AR 4-7 at 364-74. In that report, Dr. Teichner identified himself as Plaintiff's "treating psychologist," AR 4-7 at 364, again listed the impairments discussed in his 2009 report and 2011 letter, and stated that Plaintiff's GAF score was 40, AR 4-7 at 365. Dr. Teichner also opined that the prospect of Plaintiff working in a non-sheltered work setting is "extremely poor and highly improbable." AR 4-7 at 370.

According to Dr. Teichner's February 2012 report, he last treated Plaintiff on December 29, 2011. AR 4-7 at 364. Despite requests by the ALJ for Plaintiff to produce medical records substantiating treatment in December 2011, neither Plaintiff nor Dr. Teichner provided such records. AR 4-2 at 23-24.

### B. Procedural Background

On August 11, 2011, the SSA granted Plaintiff's request for an administrative hearing. AR 4-2 at 16. This hearing was held on March 27, 2012, and included testimony from Plaintiff, his mother, his attorney, and a vocational expert. AR 4-2 at 16, 31-75. The hearing covered various topics, including Plaintiff's current activities, his work with a vocational job coach, his relationship with Dr. Teichner, and other information relevant to his application. When asked about the December 2011 treatment date listed on Dr. Teichner's report, Plaintiff's counsel responded that "I think that had to do with preparation of these documents." AR 4-2 at 43. A

vocational expert, Kristen Cicero, later testified that there are "light, unskilled . . . jobs" that exist in large numbers within the national and regional economies which Plaintiff could perform despite his impairments—*e.g.*, garment bagger, packager, and laundry worker positions.  AR 4-2 at 71-73.

The ALJ affirmed the denial of Plaintiff's claim for benefits.  AR 4-2 at 13-25.  In her written opinion, the ALJ followed the five-step analysis required under 20 C.F.R. § 404.1520(a)(4), evaluating all medical opinions related to Plaintiff's conditions, vocational rehabilitation records, testimony from the administrative hearing, and inferences drawn from each.  AR 4-2 at 16-18, 26-30.  She concluded that Plaintiff's five identified impairments did not meet the requirements for disabilities as articulated by 20 C.F.R. Part 404, Subpart P, Appendix 1, and that Plaintiff could perform jobs that exist in the national economy.  AR 4-2 at 18-25.

Notably, in reaching her conclusions, the ALJ gave "no weight" to Dr. Teichner's opinions because "there [was] no evidence in the record substantiating that Dr. Teichner has had a current treatment relationship with the claimant during the period in question."  AR 4-2 at 23-24.[1]  The ALJ further explained that she "held the record open to get additional records from Dr. Teichner after 2009, but the claimant's representative reported that there are no additional treatment records."  AR 4-2 at 23-24.  Instead, the ALJ gave greater weight to the opinions of non-examining sources[2] consulted by the SSA, because their reports were "supported by the evidence of record as a whole."  AR 4-2 at 24.  Plaintiff appealed this decision to the Appeals Council, which affirmed

---

[1] The "relevant period" includes the period between when the insured died and the date that the claimant turns 22. 20 C.F.R. § 404.350(a).  For Plaintiff, the relevant period began when James McLaurin died on October 10, 2010, and ended on December 5, 2010.  AR 4-2 at 16.

[2] The SSA defines a "non-examining source" as an "acceptable medical source who has not examined you but provides a medical or other opinion in your case."  20 C.F.R. § 404.1502.

the ALJ's decision in a letter dated August 27, 2013. AR 4-2 at 4-6.

Having exhausted his administrative remedies, Plaintiff filed his complaint on February 14, 2014, seeking to reverse the ALJ's denial of benefits. *See* Compl., ECF No. 1. Defendant has asked the court to affirm the decision as rendered. Def.'s Mem. at 1.

### III. DISCUSSION

#### A. Standard of Review

A court reviewing a Social Security Administration decision "will not disturb the determination of the Commissioner if it is based on substantial evidence in the record and the correct application of the relevant legal standards." *Hartline v. Astrue*, 605 F. Supp. 2d 194, 203 (D.D.C. 2009) (citing *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004)) (interpreting 42 U.S.C. § 405(g)). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Importantly, this standard can be met with "'something less than a preponderance of the evidence,'" so long as the opinions are supported by more than a "scintilla of evidentiary support." *Hartline*, 605 F. Supp. 2d at 203 (quoting *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365-66 (D.C. Cir. 2003)). A court evaluating such a decision must carefully examine the entire administrative record to determine if the ALJ met these two requirements. *See Butler*, 353 F.3d at 999 (citations omitted).

A court must exhibit deference to the ALJ's decisions about the appropriate weight of evidence, rather than substitute its judgment for that of the ALJ. *Hartline*, 605 F. Supp. 2d at 203. Notwithstanding this deference, a reviewing court should be able to discern how evidence was analyzed and how much weight it received. *Id.* at 203. Ultimately, the inquiry involves determining whether "the ALJ . . . 'has analyzed all evidence and has sufficiently explained the

weight he has given to obviously probative exhibits.'" *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (quoting *Stewart v. Sec'y of HEW*, 714 F.2d 287, 290 (3d Cir. 1983)). In an appeal before a reviewing court, "[t]he plaintiff bears the burden of showing that the Commissioner's decision was not based on substantial evidence." *Charles v. Astrue*, 854 F. Supp. 2d 22, 27-28 (D.D.C. 2012) (citation omitted).

**B.    SSA Standard for Review of Disability Claims**

A claimant seeking disability insurance benefits must establish that he is "disabled" as defined under 42 U.S.C. § 423. A "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Act further explains that such impairments must be of a severity that renders a person "unable to do his previous work" and also unable to "engage in any other kind of substantial gainful work which exists in the national economy" in consideration of the claimant's "age, education, and work experience." *Id.* at § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505. For purposes of the statutes, "substantial gainful work" involves significant physical or mental activity, including part-time work, performed for pay or profit. 20 C.F.R. § 404.1572.

The SSA uses a sequential five-step process to evaluate a disability claim. 20 C.F.R. § 404.1520(a)(4). The inquiry requires that the ALJ evaluate (1) the claimant's current and past work activity; (2) the severity and duration of the claimant's medically determinable impairments; (3) whether the impairments meet the requirements outlined in the Listing of Impairments provided by the SSA; (4) the claimant's residual functional capacity (RFC) and past relevant work experience; and (5) the claimant's ability to adjust to other work that exists in the national

economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also* 42 U.S.C. § 423(d)(2)(A). The ALJ must apply the five steps in order until she can conclusively make a decision. 20 C.F.R. § 404.1520(a)(4); *see also Blackmon v. Astrue*, 719 F. Supp. 2d 80, 82-83 (D.D.C. 2010). The claimant carries the burden as to the first four steps, at which point the burden shifts to the SSA to show that the claimant can perform "other work" despite claimant's current medical and personal circumstances. *Blackmon*, 719 F. Supp. at 83.

### C. Plaintiff's Arguments for Reversal

Plaintiff urges reversal of the ALJ's decision, arguing that the ALJ (1) failed to properly consider "the full extent" of Dr. Teichner's opinion; (2) did not give "any rationale for rejecting" Dr. Teichner's reports; (3) incorrectly dismissed evidence demonstrating a current relationship between Plaintiff and Dr. Teichner; (4) gave insufficient deference to Dr. Teichner's comprehensive neuropsychological battery exam; and (5) placed misguided reliance on the opinions of vocational rehabilitation records. Pl.'s Mem., ECF No. 6-1, at 6-8.

#### 1. *Inadequate Consideration of Dr. Teichner's Opinions*

Three of the specific arguments made by Plaintiff—the ALJ failed to properly consider "the full extent" of Dr. Teichner's opinion; did not give "any rationale for rejecting" Dr. Teichner's reports; and did not defer to Dr. Teichner's comprehensive neuropsychological battery exam—all relate to Plaintiff's central contention that "that the Administrative Law Judge failed to evaluate Dr. Teichner's opinions." Pl.'s Opp'n and Reply, ECF No. 9, at 2 [hereinafter "Pl.'s Opp'n"]. So too does Plaintiff's argument that the ALJ improperly rejected evidence that Dr. Teichner had a current relationship with Plaintiff. The court finds no error in the ALJ's evaluation of Dr. Teichner's opinions or in her finding that Dr. Teichner had last treated Plaintiff in 2009.

To determine the weight afforded to medical opinions, an ALJ must consider: (1) the examining relationship; (2) the treatment relationship; (3) the evidence used to support the medical opinion; (4) the medical opinion's consistency with the record; (5) the specialization of the medical source; and (6) any other factors admitted into the proceedings that affect the credibility of the medical opinion. 20 C.F.R. § 404.1527(c). An ALJ generally should give "controlling weight" to a "treating source," as defined under 20 C.F.R. § 404.1502. *Id.* § 404.1527(c)(2). However, Plaintiff has not argued that Dr. Teichner was a "treating source" and thus entitled to "controlling weight." *See* Pl.'s Opp'n at 2 ("The Plaintiff did not argue that Dr. Teichner's opinions were entitled to controlling weight."). The court therefore only considers whether the ALJ properly evaluated and weighed Dr. Teichner's opinions as a nontreating source under 20 C.F.R. § 404.1527(c)(2).

The ALJ explained in her decision that she afforded no weight to Dr. Teichner's opinions because "there [was] no evidence in the record substantiating that Dr. Teichner has had a current treatment relationship with the claimant during the period in question." AR 4-2 at 23-24. That finding is supported by the record. In the last of his three reports, dated February 17, 2012, Dr. Teichner listed December 29, 2011, as his most recent visit with Plaintiff. AR 4-7 at 364-70. However, Dr. Teichner failed to submit medical records to substantiate a visit on this date, AR 4-6 at 286, and Plaintiff's counsel admitted that the December 29, 2011, date likely "had to do with [the] preparation" of his report, AR 4-2 at 43. Thus, the evidence—or, more accurately, the lack thereof—was sufficient to support the ALJ's finding that Dr. Teicher's last examination of Plaintiff occurred not in December 2011, but in June 2009. Her rejection of Dr. Teichner's opinions because he lacked a current treating relationship with Plaintiff and had not recently evaluated him is consistent with the regulations. *Cf.* 20 C.F.R. § 404.1527(c)(2)(i) (stating that "the longer a

9

treating source has treated you and the more times you have been seen by a treating source," the greater the weight that should be afforded to the source).

Plaintiff's next argument—that the ALJ failed to consider "the full extent of Dr. Teichner's opinions," Pl.'s Memo at 6—is belied by the clear text of her decision. The ALJ reviewed and understood Dr. Teichner's reports and the opinions therein. For instance, the ALJ's decision summarized that Dr. Teichner had found "that the claimant displayed significant cognitive limitations, had a GAF of 45, and was unprepared vocationally" and provided citations to Dr. Teichner's reports. AR 4-2 at 22. Elsewhere, the ALJ wrote that she "ha[d] considered the July 1, 2011, and the February 17, 2012, opinions of Dr. Teichner that the claimant is unable to maintain employment and has a GAF of 40-45," again citing to his reports. *Id.* at 23. She also explained that she gave no weight to his assessments because they were stale compared to more recent evidence. *Id.* at 24. Based on these portions of the ALJ's decision, the court is satisfied that the ALJ adequately considered Dr. Teichner's opinions.

Additionally, there is no requirement, as Plaintiff seems to argue,[3] that the ALJ must identify in her written ruling every discrete opinion of an applicant's expert and explain the reasons for rejecting each of them. *See Hartline*, 605 F. Supp. 2d at 207 (rejecting the plaintiff's argument that an ALJ's opinion must "itemize" every finding in an expert's report). Rather, § 404.1527 only requires that the ALJ generally acknowledge an applicant's expert's opinion and provide reasons for the weight given (or not given) to it. *See* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating

---

[3] Pl.'s Opp'n at 2 (asserting that, other than his opinions regarding employability and GAF score, Dr. Teichner's "remaining opinions were not addressed in any manner"); *id.* at 2-3 (arguing that the ALJ "made no mention whatsoever of the majority of Dr. Teichner's opinions, and performed no analysis of these opinions"); *id.* at 3 (contending that "there is no indication from the administrative decision that the [ALJ] considered Dr. Teichner's" specific opinions about Plaintiff's various difficulties).

10

source's opinion."); *see also Hartline*, 605 F. Supp. 2d at 207 (D.D.C. 2009) (finding that it was sufficient for the ALJ to "specifically incorporate" the plaintiff's expert's assessment in the ALJ's opinion). That is precisely what the ALJ did here. Indeed, given that the ALJ rejected Dr. Teichner's opinions because she believed they were stale, it would have been senseless for her to enumerate all of them only to reject each of them individually for the same exact reason.

### 2. *Giving Greater Weight to Dr. Lish's Opinion*

Next, Plaintiff is critical of the ALJ for giving greater weight to Dr. Lish, who met and examined Plaintiff only once in connection with his application for benefits, than to Dr. Teichner, who had examined Plaintiff over multiple days and subjected him to various tests and examinations. More specifically, Plaintiff argues that Dr. Lish "performed only a mini-mental status examination upon the Plaintiff, an examination which stands in stark contrast to the comprehensive neuropsychological battery performed by Dr. Teichner." Pl.'s Memo at 7.

But the ALJ's decision to give greater weight to Dr. Lish than to Dr. Teichner was based on substantial evidence and was consistent with the relevant regulations. Dr. Lish examined Plaintiff in March 2011, almost two years after Dr. Teichner. AR 4-7 at 322-24. His examination "confirmed that Mr. McLaurin does struggle with cognitive difficulties that affect his ability to learn and function at normal levels," but he also reported that "Mr. McLaurin stated that he can take care of his daily living needs in a timely manner and that he needs no assistance" and that "[h]is social adeptness and self-confidence appeared within normal range." *Id.* at 323. Dr. Lish reported that Plaintiff had a GAF of 55. *Id.* at 324. The ALJ observed that these findings were consistent with other evidence in the record, including Plaintiff's and his mother's testimonies and vocational training reports. AR 4-2 at 20, 23. Based on "careful consideration of the evidence," the ALJ concluded:

> The residual functional capacity described above accounts for mental limitations that would prevent the claimant from performing detailed and complex tasks, having extensive social interaction, and working with others or at a fast production rate pace. . . . [but did] not prevent[ ] him from understanding, carrying out, and remembering simple, routine, repetitive tasks for 2 hours at a time and occasionally interacting with [others] but doing no team work, work in coordination with others or fast paced production rate work.

*Id.* at 23. In light of the ALJ's detailed explanation and careful weighing of the evidence, the court finds no error with her to give greater weight to Dr. Lish's report than to Dr. Teichner's reports. *See Hartline*, 605 F. Supp. 2d at 203 (citations omitted) ("In reviewing an administrative decision, a court may not determine the weight of the evidence, nor substitute its judgment for that of the Secretary if her decision is based on substantial evidence.").

### 3. Weight Given to Vocational Experts' Reports

Plaintiff's final argument takes the ALJ to task for her decision to give greater weight to the "minimalistic vocational rehabilitation records" than to Dr. Teichner's medical opinions. Pl.'s Memo at 7-8. Plaintiff argues that "none of these records contains any evaluation of the Plaintiff's abilities to perform work-related activities in a competitive work environment, none address any of the Plaintiff's limitations, and none . . . contain a medical opinion." *Id.*

But there was nothing improper about the ALJ's reliance on vocational records to reject Dr. Teichner's opinion and find that Plaintiff did not qualify for benefits. Plaintiff began receiving vocational rehabilitation services from the South Carolina Vocational Rehabilitation Department (SCVRD) in November 2007. AR 4-6, at 278, 289. SCVRD's records show tracking of Plaintiff's progress on a regular basis from November 2007 through March 2010. *Id.* at 278-82. In a report dated April 25, 2011—two years after Dr. Teichner's evaluation of Plaintiff—a vocational analysis indicated that Plaintiff was "doing a good job," "one [of] his strong points is assembly type of work," and "he is working at a consistent pace with minimal supervision." *Id.* at 247. As the ALJ summarized, those records showed that Plaintiff "has progressed and maintained an improved level

of mental functioning in order to be able to carry out the demands of work," *id.* at 24, and thus were inconsistent with Dr. Teichner's opinion that Plaintiff is unemployable, *id.*

Based on its review of the vocational rehabilitation records, the court finds that the ALJ's decision to rely on them to reject Dr. Teichner's opinion was supported by substantial evidence. The ALJ's rejection of Dr. Teichner's opinion also was consistent with the applicable regulations. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

IV. CONCLUSION

The court concludes that the ALJ's rejection of Dr. Teichner's opinions were supported by substantial evidence and consistent with the regulation governing evaluation of medical opinion evidence, 20 C.F.R. § 404.1527. The court therefore denies Plaintiff's Motion for Judgment of Reversal and grants Defendant's Motion for Judgment of Affirmance. A separate Order accompanies this Memorandum Opinion.

Dated: August 14, 2015

Amit P. Mehta
United States District Judge